UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
            :
**MICHAEL O. WILLIAMS**,
            :
                                 Plaintiff,
            :     **MEMORANDUM DECISION AND**
                     – against –                 **ORDER**
            :
                                         24-CV-5701 (AMD) (MMH)
            :
**REVEL RIDESHARE**,
            :
                                 Defendant.
            :
------------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

       The *pro se* plaintiff brings this action against the defendant, Landey EV Dispatch, Inc., named on the docket as "Revel Rideshare," under Title VII of the Civil Rights Act of 1964, 42 U.S.C. ¶ 2000e *et seq.* The plaintiff alleges that the defendant discriminated against him on the basis of race, color, and gender/sex by terminating his employment, imposing unequal terms and conditions of employment, and retaliating against him. The plaintiff also alleges breach of contract.

       Before the Court is the defendant's motion to compel arbitration. As explained below, the defendant's motion is denied with leave to renew. The Court directs the parties to conduct limited discovery on the question of whether the plaintiff belongs to a "class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1.

## BACKGROUND

**I.      Factual Background**

The facts are drawn from the complaint, the defendant's brief, and exhibits appended to the defendant's brief.[1]

The plaintiff began working for Revel Transit, Inc. d/b/a Electric Peppers LLC ("Revel") as a rideshare driver on January 16, 2024.  (ECF No. 13-4 at 2.)  His responsibilities included transporting passengers "using a rideshare app like Revel, Uber, Lyft, etc." (ECF No. 13-1 at 2 n.2.)  When he started working for the defendant, the plaintiff signed an "Offer of Employment" that contained the following provision:

> **Mutual Agreement to Arbitrate.** To ensure the timely and economical resolution of disputes that may arise in connection with your employment with the Company and/or your interactions with the Company and any of its employees, you and the Company agree that any and all disputes, claims, or causes of action arising from or relating to the enforcement, breach, performance, negotiation, execution, or interpretation of this letter agreement, your employment, your interactions with the Company or its employees, or the termination of your employment, including but not limited to all statutory claims, will be resolved pursuant to the Federal Arbitration Act, 9 U.S.C. §1-16, and to the fullest extent permitted by law, by final, binding and confidential arbitration by a single arbitrator conducted in New York, New York by Judicial Arbitration and Mediation Services Inc. ("**JAMS**")… **By agreeing to this arbitration procedure, both you and the Company waive the right to resolve any such dispute through a trial by jury or judge or administrative proceeding**.

(ECF No. 13-4 at 6.)  The plaintiff alleges that he was a "high-performing driver," and he received a performance bonus for two straight weeks.  (ECF No. 8 at 8.)  He sought to change his

---

[1] Because this is a motion to compel arbitration, the Court considers the documents the defendant submitted with its brief.  *See Faggiano v. CVS Pharm., Inc.*, 283 F. Supp. 3d 33, 34 n.1 (E.D.N.Y. 2017) ("While it is generally improper to consider documents not appended to the initial pleading or incorporated in that pleading by reference in the context of a Rule 12(b)(6) motion[], it is…necessary[] to consider such extrinsic evidence when faced with a motion to compel arbitration." (citing *BS Sun Shipping Monrovia v. Citgo Petroleum Corp.*, No. 06-CV-839, 2006 WL 2265041, at *3 n.6 (S.D.N.Y. Aug. 8, 2006))).

2

work schedule because he did not like driving at night and he had to work around his school schedule. (*Id.*) Although Revel told the plaintiff during his training that he would be able to change his schedule, Revel rejected his request. (*Id.*) The plaintiff complained to a female driver support agent about his schedule, but she did not review or resolve his request. (*Id.*) Instead, Revel retaliated against him for complaining about his schedule. (*Id.*)

The plaintiff alleges that the defendant treated him differently than it treated female drivers; a female driver told him that she never had problems changing her schedule. (*Id.*) He also claims that Revel did not pay him for a day where he was in court for two hours, even though he told a support agent that he would be in court that day. (*Id.* at 9.) In addition, he says that passengers were abusive to him; some made racist comments, and then filed negative reviews, which affected his pay. (*Id.*) He reported this to the defendant, but it did not review camera footage or remove the negative reviews. (*Id.*) The defendant also rejected his request for a pay adjustment. (*Id.* at 10.)

The plaintiff cancelled his shifts on two different dates — May 6 and May 13, 2024 — and finally "technically quit" because "all [his] premiums were taken off." (*Id.*) On May 13, 2024, he "requested mental health enrollment," but the defendant did not respond. (*Id.*) On May 18, 2024, the defendant reduced the plaintiff's day shift from ten hours to five hours. (*Id.* at 11.) Between May 18 and May 21, 2024, the plaintiff spoke with Revel Support about a disagreement over the length of his shift. (ECF No. 13-5.) In a May 21, 2024 email to Revel Support, the plaintiff wrote, "I cannot continue to work under this [sic] conditions. I have called out from all my shifts - I quit." (*Id.* at 7.) Revel Support responded, "Thanks for letting us know…this is considered a voluntary resignation and we will remove your shifts from the schedule. While your employment will temporarily end with revel, as long as you are in good standing at the time

of your departure, you can start working with us again as soon as you'd like once you return."

(*Id.*)

Around the time of the plaintiff's resignation, the defendant launched a new business model under the name Landey EV Dispatch, Inc. ("Landey"). (ECF 13-1 at 6.) The plaintiff started working for Landey as a contractor on June 3, 2024. (*Id.*) He also signed a "Services Agreement" and a "Mutual Arbitration Agreement." (ECF No. 13-6; ECF No. 13-7.) The Mutual Arbitration Agreement contained the following provision:

> The Parties agree to arbitrate all claims between them, including, but not limited to…claims for breach of contract, tort claims, and claims for wrongful discharge…discrimination and/or harassment claims, retaliation claims, and claims for failure to accommodate…claims for overtime, wages, leaves, paid time off, sick days, compensation, penalties or restitution, or any other form of remuneration or pay…all claims for violation of a federal, state, or local statute or ordinance creating employment rights including but not limited to claims under…Title VII of the Civil Rights Act of 1964…and any other claim under any federal, state, or local statute, constitution, regulation, rule, ordinance, or common law, arising out of and/or related to the Services Agreement(s) between Contractor and Company, Contractor's engagement with the Company, the cessation of such engagement, and/or Contractor's use of application(s) and/or platform(s) in connection with the engagement with Company.

(ECF No. 13-7.) The plaintiff alleges that he received a weekly performance bonus for three weeks, but the defendant stopped paying the bonus and refused to send him information to track his ratings. (ECF No. 8 at 12.) He alleges that he was terminated on August 7, 2024 because of his driver ratings. (*Id.*)

## II.     Procedural History

The plaintiff brought this action on August 12, 2024. (ECF No. 1.) On August 22, 2024, the Court dismissed the complaint without prejudice for failure to state a claim, because "[n]one of the plaintiff's allegations give rise to an inference of discrimination or discriminatory intent." (ECF No. 5 at 4.) The Court also found that the plaintiff failed to show that he "exhausted all administrative remedies, because he did not file the relevant documentation from either the

EEOC or the New York State Division of Human Rights, such as a notice of right to sue." (*Id.*) The Court granted the plaintiff leave to amend his complaint and directed him to "attach all relevant documentation from the EEOC and the New York State Division of Human Rights that bear on whether the plaintiff exhausted his administrative remedies." (*Id.* at 5.) The plaintiff subsequently sought a Notice of Right to Sue from the EEOC, which was issued on September 7, 2024. (ECF No. 8 at 13.)

The plaintiff filed an amended complaint on October 21, 2024. (ECF No. 8.) On January 17, 2025, the defendant moved to compel arbitration and stay this action, arguing that "all of Plaintiff's claims are covered by valid and enforceable arbitration agreements." (ECF No. 13-1 at 5.) On January 22, 2025, the plaintiff responded that he did not "want to go through the arbitration process" and "would like [his] case to be here in court." (ECF No. 14).[2] On March 7, 2025, the defendant filed a reply, noting that "[i]n opposition to Defendant's Motion, Plaintiff makes no argument that his claims do not fall within the scope of the arbitration clauses, or otherwise challenge the validity of the clauses." (ECF No. 17.) In identical letters on March 11 and 12, 2025, the plaintiff advised the Court, "I understand I have the right to an arbitration, I have already gone through the EEOC and have gotten my right to sue notice. I have started this process and would like to continue." (ECF No. 18; ECF No. 19.)

## LEGAL STANDARD

### I. The Federal Arbitration Act

The Federal Arbitration Act ("FAA") provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

---

[2] The plaintiff also filed letters on January 22 and 28, 2025 that are identical to his January 22, 2025 response to the defendant's motion. (ECF Nos. 15, 16.)

5

revocation of any contract." 9 U.S.C. § 2. "The FAA has been interpreted as a 'federal policy favoring arbitration' and requiring federal courts to 'rigorously enforce agreements to arbitrate.'" *Starke v. Squaretrade, Inc.*, No. 16-CV-7036, 2017 WL 3328236, at *5 (E.D.N.Y. Aug. 3, 2017), *aff'd,* 913 F.3d 279 (2d Cir. 2019) (quoting *Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507, 521 (E.D.N.Y. 2017)). Under the FAA, "a party may move the district court for an order directing that arbitration proceed pursuant to the parties' written agreement." *Mumin*, 239 F. Supp. 3d at 521. In resolving a motion to compel arbitration, the Court considers: "(1) whether the parties agreed to arbitrate; (2) the 'scope' of the arbitration agreement; (3) whether the plaintiff's federal statutory claims are 'nonarbitrable'; and (4) if some, but not all of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration." *Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 221–222 (2d Cir. 2019) (quoting *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004)).

"While a court's authority under the Arbitration Act to compel arbitration may be considerable, it isn't unconditional." *New Prime Inc. v. Oliveira*, 586 U.S. 105, 110 (2019). A court's authority to stay litigation and compel arbitration "doesn't extend to *all* private contracts, no matter how emphatically they may express a preference for arbitration." *Id.* (emphasis in original). As relevant here, Section 1 of the FAA "warns that 'nothing' in the Act 'shall apply' to 'contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.'" *Id.* (quoting 9 U.S.C.A. § 1). The Supreme Court has explained that the last clause of § 1 — known as the "residual exemption" — exempts from the FAA "contracts of employment of transportation workers." *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001).

6

## II. The Standard of Review for Motions to Compel Arbitration

In adjudicating motions to compel arbitration, courts generally apply "a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). "The summary judgment standard requires a court to 'consider all relevant, admissible evidence submitted by the parties.'" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002)). "In doing so, the court must draw all reasonable inferences in favor of the non-moving party." *Id.*

However, "where the issue of whether the residual clause of § 1 of the FAA applies arises in a motion to compel arbitration, the motion to dismiss standard applies if the complaint and incorporated documents provide a sufficient factual basis for deciding the issue." *Aleksanian v. Uber Techs. Inc.*, No. 22-CV-98, 2023 WL 7537627, at *2 (2d Cir. Nov. 14, 2023) (quoting *Singh v. Uber Techs. Inc.*, 939 F.3d 210, 218 (3d Cir. 2019). "If the complaint and incorporated documents fail to provide an adequate basis for deciding whether Section 1 of the FAA applies, 'the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing, with an application of the summary judgment standard to follow.'" *Id.* (quoting *Singh*, 939 F.3d at 218).

## DISCUSSION

There is no dispute that the plaintiff signed valid arbitration agreements. Therefore, the question before the Court is whether the plaintiff "belongs to a class that falls within the 'transportation worker' exception to the FAA." *Chambers v. Maplebear, Inc.*, 746 F. Supp. 3d 206, 211 (S.D.N.Y. 2024). Courts in this Circuit are divided over whether rideshare drivers fall under the residual exemption. This inquiry ultimately hinges on the factual record, and here, where the record consists only of the complaint and the defendant's motion and incorporated

7

documents, the record does not "provide a sufficient factual basis for deciding the issue" and "the parties should be entitled to discovery on the question of arbitrability." *Aleksanian*, 2023 WL 7537627, at *2.

## I. A Valid Arbitration Agreement Exists

In determining whether parties agreed to arbitrate, a court applies "state contract law principles." *Nicosia*, 834 F.3d at 229. Under New York law, "the party seeking arbitration bears the burden of proving that a valid arbitration agreement exists." *Kutluca v. PQ New York Inc.*, 266 F. Supp. 3d 691, 700 (S.D.N.Y. 2017). In support of its motion to compel arbitration, the defendant submitted copies of the plaintiff's Offer of Employment with Revel, which included a provision titled "Mutual Agreement to Arbitrate" (ECF No. 13-4 at 6), and a Mutual Arbitration Agreement with Landey. (ECF No. 13-7.) Both documents bear the plaintiff's signature (ECF No. 13-4 at 7; ECF No. 13-7 at 5), which "demonstrate[s] [his] assent to [their] terms, including the provision[s] on arbitration." *Hong v. Belleville Dev. Grp., LLC*, No. 15-CV-5890, 2016 WL 4481071, at *3 (S.D.N.Y. Aug. 17, 2016). The plaintiff does not deny that he signed these agreements; he only argues that he "do[es] not want to go through the arbitration process" and "would like [his] case to be here in court." (ECF No. 14.)

## II. Whether the Residual Exemption Applies to Rideshare Drivers

Although the parties do not address Section 1 of the FAA in their briefing, the Court considers whether the plaintiff's claims are exempt from the FAA under the residual exemption, despite the valid arbitration agreements. To determine whether rideshare drivers fall under the residual exemption, the Court considers whether rideshare drivers "are a 'class of workers engaged in . . . interstate commerce,' such that the Federal Arbitration Act cannot be the basis to compel Plaintiff to arbitrate his claims." *Islam v. Lyft, Inc.*, 524 F. Supp. 3d 338, 349 (S.D.N.Y.

8

2021) (quoting 9 U.S.C. § 1). The relevant "class of workers" is defined as rideshare drivers nationwide, rather than just the plaintiff or drivers in a specific area. *See Islam*, 524 F. Supp. 3d at 349 ("[T]he relevant inquiry under Section One is not whether Plaintiff *himself* is engaged in interstate commerce, but whether he belongs to a 'class of workers' that is."); *Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 862 (9th Cir. 2021) ("[W]e must assess the relevant 'class of workers' here, Uber drivers, at the nationwide level, rather than confine it to any limited geographic region.").

Courts in this Circuit have come to different conclusions on this question.[3] In *Islam v. Lyft, Inc.*, the court held that rideshare drivers in the United States are "engaged in . . . interstate commerce" because, although "only two to three percent of Lyft and Uber rides cross state lines," this "adds up to tens of millions of interstate rides in the United States each year" and the interstate trips are not only "by happenstance of geography;" rather, "Lyft's platform is expressly designed to enable longer, non-local rides by allowing passengers to be dropped off up to 100 miles outside of the coverage area where the ride begins." 524 F. Supp. at 350–352. The court's conclusion was "bolstered, if not independently justified, by the fact that the nationwide class of rideshare drivers frequently transports passengers to airports, train stations, and other hubs of interstate travel." *Id.* at 353.

Similarly, in *Haider v. Lyft, Inc.*, the court held that "[b]ased on Lyft's own data," "the sheer number of interstate trips rideshare drivers make places them 'within the flow of interstate commerce.'" No. 20-CV-2997, 2021 WL 1226442, at *3 (S.D.N.Y. Mar. 31, 2021) (quoting

---

[3] Although courts have analyzed this question in cases involving drivers for Uber and Lyft, no court has done so with respect to Revel or Landey. However, the defendant has suggested that Revel is similar to Uber and Lyft. (ECF No. 13-1 at 2 n.2 ("A rideshare driver's job is to transport passengers from one location to another using a rideshare app like Revel, Uber, Lyft, etc.").)

9

*Cir. City Stores*, 532 U.S. at 118). The court noted that "not every rideshare driver takes passengers across state lines," but that the same was true "for workers expressly covered by the exemption like railroad employees. Many railroad employees work intrastate routes." *Id.* The court determined that "Lyft drivers regularly transport passengers across state lines" and "transport passengers to and from hubs of interstate travel," and that "either alone would be enough to conclude that they are engaged in interstate commerce." *Id.* at *4.[4]

In *Davarci v. Uber Techs., Inc.*, the court reached the opposite conclusion and held that "Uber drivers are not engaged in interstate commerce within the meaning of Section 1." No. 20-CV-9224, 2021 WL 3721374, at *8 (S.D.N.Y. Aug. 20, 2021). Citing the Supreme Court's instruction that the Section 1 exemption "be afforded a narrow construction," *Cir. City Stores*, 532 U.S. at 118, the court reasoned that the "transportation of goods or passengers in the flow of interstate commerce must be a definitional feature of the workers' job duties, such that the work of the class can be deemed analogous to that of seamen and railroad employees, whose occupations center on the transportation of goods or persons in interstate commerce." *Davarci*, 2021 WL 3721374, at *9. According to "data provided by Uber," "Uber drivers' business does not inherently implicate interstate commerce; the business is more accurately described as a primarily local, intrastate function" because "[t]he vast majority of Uber drivers' trips are purely intrastate." *Id.*

---

[4] Courts have also found that rideshare drivers are not different than other transportation workers on the premise that they transport passengers instead of goods. *See e.g., Haider*, 2021 WL 1226442, at *3 ("[T]he Court has never drawn a distinction between the interstate transportation of people and goods."); *Singh*, 939 F.3d at 221 ("[N]othing in the residual clause of § 1 suggests that it is limited to those who transport goods, to the exclusion of those who transport passengers."); *Rogers v. Lyft, Inc.*, 452 F. Supp. 3d 904, 914 (N.D. Cal. 2020), *aff'd*, No. 20-15689, 2022 WL 474166 (9th Cir. Feb. 16, 2022) ("'[I]t is settled beyond question that the transportation of persons is commerce' for constitutional purposes, an understanding that prevailed well before the enactment of the FAA.") (quoting *Edwards v. People of State of Cal.*, 314 U.S. 160, 172 (1941)).

Finding that Uber drivers were "largely equivalent to local taxi drivers for purposes of assessing their engagement in interstate commerce," the court applied the Supreme Court's reasoning in *United States v. Yellow Cab Co.*, 332 U.S. 218 (1947), *overruled on other grounds by Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984). In the *Yellow Cab* case, the Supreme Court held that when taxicabs "merely convey interstate train passengers between their homes and the railroad station in the normal course of their independent local service, that service is not an integral part of interstate transportation." *Yellow Cab*, 332 U.S. at 233. Applying this logic to rideshare drivers, the *Davarci* court concluded that the "fact that a passenger hails an Uber via an app on his smartphone rather than by standing on the curb with his arm raised or using an old-fashioned telephone to call an equally old-fashioned taxi dispatcher does not alter the fundamental nature of the driver's job." 2021 WL 3721374, at *10. The court also found that the disparity in the number of intrastate trips for Uber drivers in different geographic regions shows that interstate travel is "incidental to an Uber driver's employment, not a core feature." *Id.* at 12.[5]

### III. Limited Discovery is Required to Determine Whether he Residual Exemption Applies

The Second Circuit has not definitively ruled on whether rideshare drivers fall under the residual exemption. In *Aleksanian v. Uber Techs. Inc.*, the Second Circuit cited the "variety of tests" that courts have articulated "in examining Section 1 of the FAA." 2023 WL 7537627, at *2 n.3. The complaint provided "some statistics pertaining to the interstate trips of [the] plaintiffs-appellants," and said that "on information and belief," the plaintiff-appellants'

---

[5] Courts in other circuits have found that rideshare drivers are not engaged in interstate commerce and therefore do not fall under the residual exemption. *See e.g., Capriole,* 7 F.4th at 863; *Cunningham v. Lyft, Inc.*, 17 F.4th 244, 253 (1st Cir. 2021); *Singh v. Uber Technologies, Inc.*, 571 F. Supp. 3d 345, 365 (D.N.J. 2021); *Hinson v. Lyft, Inc.*, 522 F. Supp. 3d 1254, 1259 (N.D. Ga. 2021); *Osvatics v. Lyft, Inc.*, 535 F. Supp. 3d 1, 18 (D.D.C. 2021); *Rogers*, 452 F. Supp. 3d at 916.

11

"statistics would be similar," and made allegations about the imposition of surcharges on interstate trips, advertising of flat rates for interstate trips, and a deactivation policy. *Id.* at *3. But the complaint said "little about whether the class of transportation workers to which [the plaintiff-appellants] belong[ed] are engaged in interstate commerce or sufficiently related work." *Id.* (quoting *Singh*, 939 F.3d at 226). Accordingly, "[b]ecause the issue cannot be decided on the face of the complaint, discovery is required." *Id.* (citations omitted).[6]

The court found that "the Complaint does not provide a sufficient factual record on which to evaluate the applicability of the Section 1 exemption." *Id.* at *3; *see also e.g. Singh*, 939 F.3d at 2226 ("[D]iscovery must be allowed before entertaining further briefing on the question."); *Gonzalez v. Lyft, Inc.*, No. 19-CV-20569, 2021 WL 303024, at *6 (D.N.J. Jan. 29, 2021) ("Plaintiffs are entitled to a limited discovery regarding whether Plaintiffs belong to a class of workers engaged in interstate commerce under Section 1."); *Sienkaniec v. Uber Techs., Inc.,* 401 F. Supp. 3d 870, 872–73 (D. Minn. 2019) ("Any discovery must be directly related to the question of whether the transportation-worker exemption applies to [the plaintiff's] claims— a question that this Court must 'decide for itself ... *before* ordering arbitration.'") (quoting *Oliveira*, 586 U.S. at 111). Indeed, the district courts in this Circuit that held rideshare drivers to be engaged in interstate commerce did so based on the factual records before them. *See Haider*, 2021 WL 1226442, at *4 ("The Court stresses that it reaches this result on the factual record before it . . . Nothing in this order shall prejudice Lyft from renewing its motion if a more

---

[6] The court suggested information that might be "relevant to the Section 1 inquiry" based on the "decisions of other courts," including: "[the rideshare company's] policies regarding interstate trips; the potential penalties and costs of declining interstate trips; [the rideshare company's] revenue from interstate trips; the average number of interstate trips [the rideshare company's] drivers take over various time periods (such as a week, a month, or a year); the median number of interstate trips for [the rideshare company's] drivers over various time periods; what percentage of [the rideshare company's] drivers take interstate trips over various time periods; how often [the rideshare company's] drivers decline interstate trips; and any other relevant information." *Aleksanian*, 2023 WL 7537627, at *3

developed factual record shows that Islam is not among a class of workers engaged in interstate commerce."); *Islam*, 524 F. Supp. at 342 ("[T]he Court agrees with Plaintiff that, on the basis of information already in the record, he belongs to a class of workers engaged in interstate commerce.").

Accordingly, limited discovery is required in this case to "address[] the question of whether the [plaintiff] belong[s] to a 'class of workers engaged in foreign or interstate commerce.'" *Aleksanian*, 2023 WL 7537627, at *3 (quoting 9 U.S.C. § 1). The complaint does not provide any information from which the Court can evaluate the applicability of the residual exemption. The defendant submitted exhibits that include some relevant information about a Landey driver's ability to decline trips (*see* ECF No. 13-6 at 2 ("the Contractor has the right/option to refuse to accept any job/trip, ignore any job/trip offer, and/or cancel a job/trip offer after Contractor has accepted it")), but the record is nevertheless "insufficient" for the Court "to resolve the inquiry in this case." *Aleksanian*, 2023 WL 7537627, at *3.

## CONCLUSION

For these reasons, the defendant's motion to compel arbitration is denied with leave to renew. The parties are directed to conduct limited discovery on the question of whether the plaintiff belongs to a "class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1.

**SO ORDERED.**

                                                                                           s/Ann M. Donnelly
                                                                                      ANN M. DONNELLY
                                                                                      United States District Judge

Dated: Brooklyn, New York
         June 11, 2025